UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN JANKOWSKI,

                         Plaintiff,

   v.                                                 **DECISION AND ORDER**
                                                               13-CV-538S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

       1.     Brian Jankowski challenges the decision of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act").

       2.     Alleging disability due principally to back pain from an injury sustained at work on November 17, 2007, Jankowski applied for Social Security benefits on February 25, 2010. The Commissioner of Social Security ("Commissioner") denied that application, and as result, Jankowski requested an administrative hearing. He received that hearing before ALJ Roxanne Fuller on September 19, 2011.The ALJ considered the case *de novo*, and on December 8, 2011, issued a decision denying Jankowski's application. Jankowski filed a request for review with the Appeals Council, but the Council denied that request, prompting him to file the current civil action, challenging Defendant's final decision.[1]

       3.     On November 12, 2013, Jankowski filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. The Commissioner never filed a motion of her own, but eventually did file a response to Jankowski's

---

[1] The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

motion. (See Docket Nos. 11, 12.) No further briefing occurred. For the following reasons, Jankowski's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a

*de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

      6.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

      7.     This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

      8.     In this case, the ALJ made the following findings: (1) Jankowski has not

engaged in substantial gainful activity since his onset date (R. 13)[2]; (2) Jankowski suffers from "status post back surgeries," anxiety and depression, all severe impairments (id.); (3) he does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (R. 14); (4) he retains the residual functional capacity ("RFC") to perform sedentary work with various limitations (R. 15–16)[3]; and (5) there are jobs that exist in significant numbers in the national economy that he can perform. (R. 20.) Ultimately, the ALJ concluded that Jankowski was not under a disability, as defined by the Act, from his onset date through the date of the decision. (R. 21.)

9. Jankowski raises two related objections to the ALJ's findings. First, he contends that the ALJ failed to properly consider the opinion of his treating physician, Dr. William Capicotto. Second, he contends that the ALJ failed to properly consider the opinion of his chiropractor, Dr. Michael Impaglia.

10. Jankowski makes much of the fact that Dr. Capicotto repeatedly found him to be totally temporarily disabled. But, as the Commissioner correctly points out, Social Security law does not recognize disability designations such as "total" or "temporary." Rather, the standard to be applied by the ALJ asks whether Jankowski (or any claimant) "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[2] Citations to the underlying administrative record are designated "R."

[3] Specifically, the ALJ found that Jankowski could not perform jobs that required "foot[-]control operation with the right foot" or that required him to "climb ramps, stairs, ladders, ropes, or scaffolds." Further, he cannot "balance" and he can only "occasionally stoop, crouch, kneel, or crawl." He must avoid "all . . . moving machinery" and "exposure to unprotected heights." Additionally, he can "remember and carry out one to two step instructions," and he can perform only "simple, routine, repetitive tasks." (R. 15–16.)

twelve months." 42 U.S.C. 1382c(a)(3)(A). Only if this standard is met can a claimant be considered disabled for the purposes of the Social Security Act. There is simply no way to know whether Dr. Capicotto was applying this standard when he found Jankowski to be disabled. And that is one reason why, as the ALJ correctly noted, "the ultimate finding of whether a claimant is disabled and cannot work . . . is 'reserved to the Commissioner.'" Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (quoting 20 C.F.R. § 404.1527(d)(1). Indeed, the Commissioner is "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability." 20 C.F.R. § 404.1527(d)(1). Thus, while the ALJ is obligated to consider "the data that physicians provide," she must "draw[] [her] own conclusions as to whether those data indicate disability." Snell, 177 F.3d at 133. Accordingly, Jankowski's argument that the ALJ erred by "substituting her own opinion for [a] medical expert opinion" and by "interpreting the objective medical findings" is off the mark. (Pl.'s Br. at 12). Indeed, this is the ALJ's duty.

11. Jankowksi relies on Gilbert v. Apfel, for the proposition that "the ALJ cannot arbitrarily substitute her own judgment for competent medical opinion, nor can she set her own expertise against that of a physician who submitted an opinion or testified before her." 70 F. Supp. 2d 285, 290 (W.D.N.Y. 1999) (internal citations, quotations, and modifications omitted). But the opinions of the medical sources in that case (and the cases cited therein) were not the conclusory findings of disability present here. Rather, the medical sources in those cases described medical and functional impairments – findings that the ALJ ultimately rejected. These two types of opinions cannot be conflated. Unlike the familiar "treating-physician rule," which compels the ALJ in some situations to assign greater weight to the medical findings of a treating source,

5

the Social Security regulations make clear that the Commissioner will "not give any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3). Jankowski's objection on this ground is therefore rejected.

12. Jankowski's next objection fares no better. He contends that the "ALJ summarily dismissed the records and recommendations from Dr. Impaglia." (Pl.'s Br. at 21.) But throughout an argument in which he explains at length the rules that apply to "other sources," such as a chiropractor, the only "records" or "recommendations" that Jankowski specifically identifies are a letter from Dr. Impaglia to the workers compensation board in January of 2008 and a later letter from March of 2008. In the first letter, Dr. Impaglia noted that Jankowksi "is unable to resume his duties at work" and expressed his "strong" suspicion that Jankowski has a herniated lumbar disc. (R. 698.) The second letter, addressed "to whom it may concern" notes simply that Jankowski is "totally disabled." (R. 701.)

13. Of course the disability findings can be accorded no weight for the same reasons discussed immediately above. And, as for the other finding, Jankowski makes no effort to describe how a suspicion of a herniated disc either compels a finding of disabled or was not fully accounted for in the ALJ's opinion.

14. As the ALJ noted, Dr. Impaglia also found that Jankowski can stand for 1–4 hours and can sit for 1-3 hours so long as he is able to change positions.  (R. 690.) Dr. Impaglia also found that Jankowski could lift ten pounds, but never bend, squat or climb. (Id.) The ALJ specifically noted that he "accommodate[d] this opinion" by, among other things, "limiting the claimant to a reduced range of sedentary work" and by adopting the postural limitations described by Dr. Impaglia. (R. 19.) It clearly cannot be

said then that the ALJ "summarily dismissed" Dr. Impaglia's opinions. Unlike <u>Simpson v. Astrue</u>, a case on which Jankowski relies, the ALJ did not "merely recite[] [the] opinion and reject[] it in one sentence" because it did not come from an acceptable medical source. No. 11-CV-6500JWF, 2013 WL 4495090, at *10 (W.D.N.Y. Aug. 19, 2013). Rather, she considered it and "accommodate[d]" it. This Court finds no error in the weight that the ALJ afforded Dr. Impaglia's opinion.

15.    Based on a thorough review of the record, this Court has no doubt that Jankowksi suffers from problems with his lumbar spine. Indeed, he had two back surgeries. But the ALJ found that, post surgery, Jankowski retains the capacity to do some limited, sedentary work as long as certain conditions are met. Much of the evidence to the contrary – suggesting that Jankowski cannot perform any work – is in the form of his own testimony about the pain he suffers. While an ALJ must consider the claimant's testimony, he "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." <u>Genier v. Astrue</u>, 606 F.3d 46, 49 (2d Cir.2010) (per curiam). Indeed, "the ALJ alone decides issues of credibility and this Court must give great deference to those decisions, as the ALJ observed the witness's testimony and demeanor." <u>Walker v. Astrue</u>, No. 11-CV-766S, 2012 WL 4473249, at *5 (W.D.N.Y. Sept. 26, 2012) (citing <u>Gernavage v. Shalala</u>, 882 F. Supp. 1413, 1419 n. 6 (S.D.N.Y.1995); <u>Serra v. Sullivan</u>, 762 F. Supp. 1030, 1034 (W.D.N.Y.1991)). Applying that deferential standard, this Court finds no error in the ALJ's determination that the persistence and intensity of Jankowski's symptoms were somewhat overstated and that he could perform the type of work outlined in the RFC.

****

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that the Clerk of Court shall close this case.

SO ORDERED.

Dated: June 30, 2014
     Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court
